

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 12, 2017**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 13-41109-MXM |
| TRAVIS WILBANKS HAZLEWOOD, | § | |
| | § | CHAPTER 13 |
| DEBTOR. | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING TRUSTEE'S MOTION TO MODIFY CHAPTER 13 PLAN**
*Relates to ECF No. 393*

Before the Court is *Trustee's Motion to Modify Chapter 13 Plan*[1] (the "***Plan***

***Modification***") filed on December 16, 2016 by Tim Truman, the Standing Chapter 13 Trustee

("***Trustee***"). In response, Debtor filed his *Debtors (sic) Response to Trustee's Motion to Modify*

---

[1] Trustee's Mot. to Modify Ch. 13 Plan, ECF No. 393.

*Chapter 13 Plan*[2] ("***Debtor's Objection***"). The Court held a hearing on the Plan Modification and Debtor's Objection on February 27, 2017, at which time the parties requested the opportunity to brief the disputed issues. Thereafter, on March 9, 2017, Trustee filed his *Chapter 13 Trustee's Brief in Support of Trustee's Modification of Chapter 13 Plan*;[3] on March 16, 2017, Debtor filed his *Debtors (sic) Brief in Support of Response to Trustee's Motion to Modify Chapter 13 Plan*;[4] and on March 24, 2017, Trustee filed his *Chapter 13 Trustee's Reply Brief to Debtor's Brief.*[5]

After considering the Plan Modification, Debtor's Objection, arguments of counsel during the hearing, and all subsequent briefing of the parties, the Court finds that the Plan Modification should be denied for the reasons set forth below.

## I.     BACKGROUND FACTS

The following facts are undisputed. Debtor filed his Chapter 13 bankruptcy case on March 7, 2013 (the "***Petition Date***"). Thereafter, on April 2, 2013, Debtor filed, among other pleadings, (i) *Debtor's(s') Chapter 13 Plan and Motion for Valuation*[6] (the "***Original Chapter 13 Plan***"), and (ii) Debtor's *Schedules.*[7]

Debtor's *Schedule B – Personal Property* disclosed, among other assets, contingent and unliquidated claims including Debtor's interest in a lawsuit described as "Travis Hazlewood, Sealy Four Company d/b/a Sweetwater Well Service v. Brad White, Trace Robbins and Richard Evans" with an "unknown" value (the "***White Lawsuit***"). Debtor subsequently amended

---

[2] Debtors (sic) Resp. to Trustee's Mot. to Modify Ch. 13 Plan, ECF No. 395.

[3] Ch. 13 Trustee's Br. in Supp. of Trustee's Modification of Ch. 13 Plan, ECF No. 427.

[4] Debtors (sic) Br. in Supp. of Resp. to Trustee's Mot. to Modify Ch. 13 Plan, ECF No. 428.

[5] Ch. 13 Trustee's Reply Br. to Debtor's Br., ECF No. 434.

[6] Debtor's Ch. 13 Plan and Mot. for Valuation, ECF No. 16.

[7] Sched. A through J with Summ. of Scheds., ECF No. 18.

Schedule B four times prior to confirmation.[8] With each pre-confirmation amendment of his Schedules, Debtor continued to represent the value of Debtor's unliquidated White Lawsuit as "unknown."

Debtor's Original Chapter 13 Plan made no mention of and contained no provision regarding Debtor's interest in the unliquidated White Lawsuit or its proceeds. Debtor subsequently amended his Original Chapter 13 Plan three times prior to confirmation.[9] In his proposed first amended plan filed on May 8, 2015,[10] Debtor added the following provision which incorporated the White Lawsuit: "[I]f Debtor is successful on his civl (sic) lawsuits Debtor shall pay increase (sic) his plan base by the dollar amount awarded on each suit." Following further negotiations between Debtor, Trustee, and other creditors and parties in interest, however, the above provision was deleted and removed from all subsequently filed proposed amended plans, and such a provision was not included in the final version of Debtor's amended plan filed on December 16, 2015[11] (the "***Confirmed Plan***"),[12] which was confirmed on January 26, 2016 (the "***Confirmation Date***"). Consequently, upon confirmation of the Confirmed Plan, the White Lawsuit and its proceeds vested in Debtor free and clear of any claims or interest of any creditor provided for in the Confirmed Plan.[13] Accordingly, after the Confirmation Date, the White Lawsuit was no longer property of the estate.

---

[8] Am. Scheds., ECF Nos. 39, 90, 135, 213.

[9] Debtor's Am. Ch. 13 Plan and Mot. for Valuation, ECF Nos. 157, 229, 232.

[10] Debtor's Am. Ch. 13 Plan and Mot. for Valuation, ECF No. 157.

[11] Debtor's Am. Ch. 13 Plan and Mot. for Valuation, ECF No. 232.

[12] Order Confirming Ch. 13 Plan, Valuing Collateral; Allowing Debtor's Att'ys Fees; Providing for a Trustee's Recommendation Concerning Claims and Other Related Matters, ECF No. 237 (the "***Order Confirming Plan***").

[13] *See* 11 U.S.C. §§ 1327(b) and (c).

On August 18, 2016, Debtor's interest in the White Lawsuit was liquidated to a judgment in favor of Debtor and Debtor's co-plaintiffs.  The value of Debtor's share in the White Lawsuit judgment was estimated to be approximately $44,000.  Accordingly, Debtor amended his Schedule B on October 4, 2016, to disclose that Debtor's share of the White Lawsuit had been liquidated to a judgment in the approximate amount of $44,000, although Debtor asserted his ability to collect on the White Lawsuit judgment remained "unknown."[14]

Because Debtor's interest in the White Lawsuit was liquidated to a judgment after confirmation, Trustee filed his Plan Modification seeking to modify the Confirmed Plan to increase the plan base by the amount of the White Lawsuit judgment proceeds, if any, that may ultimately be collected by Debtor.  Should Trustee's Plan Modification be granted, any proceeds collected on the White Lawsuit judgment would be turned over to Trustee for distribution to creditors pursuant to the terms of the modified plan.

In support of his Plan Modification, Trustee asserts, in part, that:

    i. §§ 1329(a)(1) and 1322(b)(8) allow Trustee to file a plan modification that is funded by property of Debtor, including property that had revested in Debtor upon confirmation of the Confirmed Plan pursuant to § 1327; and

    ii. the doctrine of *res judicata* does not apply to preclude Trustee's Plan Modification.

Debtor, on the other hand, asserts, in part, that Trustee's Plan Modification should be denied because:

    i. the Plan Modification constitutes an improper attempt to usurp Debtor's right to possession and control of the White Lawsuit and its proceeds, which vested in Debtor free and clear of any claims or interests of creditors pursuant to the Confirmed Plan, the Plan Confirmation Order, and §§ 1327(b) and (c);

    ii. the doctrine of *res judicata* bars Trustee's Plan Modification; and

---

[14] Am. Scheds. A/B and C, ECF No. 371.

iii. based on the facts of this case, Trustee's Plan Modification should be denied on equitable grounds pursuant to the Court's discretion and good judgment.

## II.     LAW AND ANALYSIS

### A. *The White Lawsuit judgment constitutes property of Debtor and not property of the estate.*

The initial determination to be made in this dispute is whether the White Lawsuit judgment constitutes property of the Chapter 13 bankruptcy estate or property of Debtor at the time Trustee filed his Plan Modification. This determination is critical because a trustee or creditor cannot employ § 1329 to take property *from* a debtor unless the court concludes that the subject property constitutes property of the bankruptcy estate rather than property of the debtor.[15] To determine whether the White Lawsuit judgment constitutes property of the estate or property of Debtor, three sections of the Bankruptcy Code must be considered.[16]

First, § 541 provides that on the date a bankruptcy case is filed, the bankruptcy estate includes, among other property, "all legal or equitable interests of the debtor in property."[17] Included within such property are causes of action belonging to the debtor at the time the case is filed.[18] In this case, Debtor's interest in the White Lawsuit arose prior to the Petition Date. Therefore, when Debtor filed his bankruptcy case, any and all interest he had in the White Lawsuit became property of the estate on the Petition Date.[19]

---

[15] *See In re Wilson*, 555 B.R. 547, 550 (Bankr. W.D. La. 2016) (bankruptcy court has no jurisdiction to entertain motion by a trustee or creditor under § 1329 seeking to take property after confirmation "unless the court concludes the property is property of the bankruptcy estate rather than the debtor.") (quoting *In re Wetzel*, 381 B.R. 247, 252 (Bankr. E.D. Wis. 2008) (quoting *In re Forte*, 341 B.R. 859, 865 (Bankr. N.D. Ill. 2005))).

[16] *In re Powers,* 435 B.R. 385, 389 (Bankr. N.D. Tex. 2010) (discussing interplay between §§ 541, 1306, and 1327).

[17] 11 U.S.C. § 541(a)(1).

[18] *See La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988).

[19] 11 U.S.C. §§ 541(a).

Second, § 1306(a) provides that property of the bankruptcy estate includes not only all property specified in § 541, but also "all property . . . that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted . . . whichever occurs first."[20]  Therefore, for example, a cause of action acquired by a debtor *after* a bankruptcy case is filed, but before the case is closed, dismissed or converted, also constitutes property of the estate and may be subject to administration in the Chapter 13 case.[21]  In this case, however, it is undisputed that the White Lawsuit was property of Debtor *prior* to his filing bankruptcy and such property became property of the estate on the Petition Date pursuant to § 541(a).

Which brings us to the third section of the Bankruptcy Code, § 1327, which provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor . . . free and clear of any claim or interest of any creditor provided for by the plan."[22]  In this case, neither the Confirmed Plan nor the Order Confirming Plan included a provision excepting the White Lawsuit or its proceeds from vesting in Debtor upon confirmation.  Therefore, pursuant to §§ 1327(b) and (c), upon confirmation of the Confirmed Plan, the White Lawsuit vested in Debtor "free and clear of any claim or interest of any creditor provided for by the plan."[23]

---

[20] 11 U.S.C. § 1306(a).

[21] *Id*; *In re Wilson*, 555 B.R. at 550.

[22] 11 U.S.C. §§ 1327(b) and (c).

[23] *Id.*  After the Confirmation Date, the Bankruptcy Courts for the Northern District of Texas entered that certain *Standing Order Concerning All Chapter 13 Cases,* General Order 2016-01, which applies in all Chapter 13 Cases in all Divisions of the United States Bankruptcy Court for the Northern District of Texas.  The General Order 2016-01 became effective as of October 1, 2016.  Included in General Order 2016-01 is a provision that provides, in part, "Property of the estate shall not vest in the *Debtor* until such time as a discharge is granted or the *Case* is dismissed or closed without a discharge."  General Order 2016-01 Section II, ¶ T.  Therefore, had General Order 2016-01 been in effect on the Confirmation Date, it appears that the White Lawsuit would have been property of the estate at the time the Trustee filed his Plan Modification.

Trustee argues that after the Confirmation Date, "Debtor's circumstances regarding the [White Lawsuit] and the nature and character of the [White Lawsuit] changed substantially."[24] Contrary to Trustee's contention, however, just because the White Lawsuit was not reduced to a judgment until after the Confirmation Date does not change or transform the White Lawsuit, or its proceeds, from property of Debtor back into property of the estate. In fact, in his reply brief, Trustee seems to concede this point when he admitted that the White Lawsuit was "property of the <u>Debtor</u>" and that the property had "re-vested in the debtor upon confirmation."[25]

There is no dispute that the White Lawsuit, and any proceeds from that lawsuit, vested in Debtor on the Confirmation Date, and such property was no longer property of this Chapter 13 estate.[26]

### B. Trustee cannot rely on §§ 1329 and 1322(b)(8) as authorization to file a Plan Modification concerning property of Debtor.

Section 1329(a)(1) allows a trustee, debtor, or unsecured creditor to request that a previously confirmed Chapter 13 plan be modified to "increase . . . the amount of payments on claims of a particular class provided for by the plan."[27] In this case, Trustee seeks to modify the Confirmed Plan to require Debtor to turn over to Trustee for distribution under the plan any proceeds realized or collected from his interest in the White Lawsuit judgment.

In support of his Plan Modification, Trustee cites § 1322(b)(8) for the proposition that a trustee may file a plan modification to require a debtor to contribute property that had previously vested in the debtor upon confirmation of the plan. "Otherwise, 1322(b)(8) has no meaning

---

[24] Trustee's Mot. to Modify Ch. 13 Plan 2–3, ECF No. 393.

[25] Ch. 13 Trustee's Reply Br. to Debtor's Br. 4, ECF No. 434.

[26] 11 U.S.C. §§ 1327(b) and (c); *see also In re Powers*, 435 B.R. 385, 389 (Bankr. N.D. Tex. 2010) ("estate property that exists at the time of confirmation vests in the debtor per section 1327(b)").

[27] 11 U.S.C. § 1329(a)(1).

when it is applied as required by Section 1329(b)(1)."[28]  Although § 1322(b) is made applicable to a modification under § 1329(a),[29] "most of the provisions in § 1322(b) are not relevant to a § 1329 motion."[30]  Trustee does not cite to any case law or other authority in support of his position that § 1322(b)(8) authorizes a trustee to file a post-confirmation modification to compel a debtor to turn over property of the debtor (as opposed to property of the estate) to increase the plan base of a confirmed plan.

The relevant Bankruptcy Code sections, taken as a whole, contradict Trustee's position. Section 1321 allows only the debtor to file a plan.  Section 1322 then provides the required[31] and permissive[32] contents of the debtor's plan.  A debtor's plan *may* "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor."[33]  So a debtor could, for example, contribute exempt property to fund a plan even though a Chapter 13 trustee could never propose such a plan under §§ 1321 and 1322 and could never force a debtor to do so.  And the plan *may* "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity."[34]  So a debtor, could, for example, propose a Chapter 13 plan that provides that property of the estate does not vest in the debtor until all creditor payments are made under the plan.

In this case, pursuant to the terms of the Confirmed Plan and §§ 1321, 1322(b)(8), 1322(b)(9), and 1327(b), the White Lawsuit vested in Debtor free and clear of creditor claims on

---

[28] Ch. 13 Trustee's Reply Br. 4.

[29] *See* 11 U.S.C. § 1329(b)(1).

[30] *In re Forte*, 341 B.R. 859, 867 (Bankr. N.D. Ill. 2005).

[31] 11 U.S.C. § 1322(a).

[32] 11 U.S.C. § 1322(b).

[33] 11 U.S.C. § 1322(b)(8).

[34] 11 U.S.C. § 1322(b)(9).

the Confirmation Date as opposed to a later time. As a result, following the Confirmation Date, the White Lawsuit and its proceeds became property of Debtor free and clear. Trustee may not now—through a modification—"unvest" Debtor's property through § 1322(b)(8). Once the White Lawsuit vested in Debtor free and clear of creditor claims, Trustee could no longer compel Debtor to contribute such property through a plan modification.

**C. Even if Trustee could propose a plan modification that is funded with Debtor's free-and-clear property, the Court denies Trustee's Plan Modification under the specific facts and circumstances of this case.**

A plan modification is in essence an attempt to revise a bargained for contractual relationship created by the parties at the time of confirmation.[35] In determining whether to approve a modification to that contractual relationship, the court should weigh the fairness of the modification in light of all of the facts and circumstances of the case.[36]

In reviewing the propriety of the Plan Modification, the Court has considered the totality of the facts and circumstances in this case, including the various plans filed by Debtor, the extensive negotiations that were taking place when the Confirmed Plan was proposed, and the ultimate terms of the Confirmed Plan that allowed the White Lawsuit to vest in Debtor free and clear of creditor claims on the Confirmation Date pursuant to § 1327(b). Even if the White Lawsuit was property of the estate that could be subject to Trustee's proposed Plan Modification—or even if Trustee could take Debtor's free-and-clear property through the Plan Modification—the Court would exercise its discretion and deny the Trustee's attempt to change

---

[35] *See In re Forte*, 341 B.R. at 869–70.

[36] *Id.* at 870.

the bargained for contractual terms that were agreed upon between Debtor, his creditors, parties in interest, and Trustee, with respect to the White Lawsuit and its proceeds.[37]

### III.    CONCLUSION

Based upon the Court's findings of fact and conclusions of law detailed above, it is hereby

**ORDERED** that the Plan Modification is DENIED.

### ### END OF ORDER ###

---

[37] Because the Court concludes there is no statutory or equitable authority for the Trustee's Plan Modification, the Court need not decide whether the doctrine of *res judicata* bars the Plan Modification.